### 22338. MERRITT *et al. v.* THE STATE.

DECIDED JUNE 15, 1932.

*J. E. Hyman,* for plaintiffs in error.
*Marvin L. Gross, solicitor-general,* contra.

LUKE, J. The special presentment in this case charges that Marvin Merritt and John Oxford committed assault with intent to murder upon Jack Burgamy by shooting him with a shotgun. The defendants were tried jointly, and both were convicted of unlawfully shooting at another. The trial judge having overruled the defendants' motion for a new trial, they excepted.

Jack Burgamy testified, in substance, that as he was going in Little Ogeechee swamp early on the morning of April 18, 1930, he saw the defendants coming out of the swamp; that Oxford was carrying a shotgun; that the defendants "turned back and went into the swamp;" that a few minutes after seeing them witness left the swamp and tried to telephone the sheriff at Sandersville, but that the line was cut half a mile below defendants' homes; that it then happened that Mr. Rountree, a State game warden, with two deputies, approached witness and asked him to go down to the river with them to see about some fish-traps which Rountree had heard were there; that the party followed the tracks made by the defendants earlier in the morning to where a fish-trap was located in the river; that just before they got to the trap some one "whistled right low," and the defendants "slipped down the creek;" that witness's party had "stayed there about fifteen minutes," when a gun fired from a distance of forty-nine yards, and several shot struck witness, who at the time was standing on a log; that witness saw Marvin Merritt "just before he taken the gun down," and that he was the man who fired the gun; that Merritt "run out from that lagoon place" and shot a second time; that only two shots were fired; that witness "did not see anybody else there at the time the gun fired," and "didn't see anybody there afterwards," but that there were "tracks and signs where the other fellow set;" that the other tracks were six or eight yards "off to Marvin's left;" that the tracks compared in size and general appearance with the tracks the defendants had made earlier in the morning, but that "there was nothing particular that indicated the identity of the tracks;" that witness had torn out a fish-trap there before, and that others "tore it out the second time;" that when the trap was torn out the second time, Merritt was fishing just above the edge of the trap—a place where there was not likely to be any fish, and that other parties were fishing above Merritt; that Merritt was in the swamp a good deal, and that Merritt had nagged at witness—"looked like he wanted to raise

a fuss;" that witness knew who did the shooting because he saw him; that "nobody else saw them at that particular time; that witness was certain that it was Marvin Merritt and John Oxford that he saw that day, and who shot him;" that witness and Oxford had had "some very severe words one to the other," and that witness had told Oxford that he "expected to prosecute him the very first opportunity;" that witness's commission as game warden had expired "just before that," and that he was not an officer; that the defendants lived about a mile from the place where the shooting occurred, and near together; that a path led from the fish-trap to a place near where the defendants lived; that there was another path to the trap, but that it was not used; that there had been numerous other traps in the river; and that Merritt was frequently in the swamp.

The foregoing is the material evidence in the case. No other member of the party with Burgamy saw either of the defendants at the time of the shooting. Both defendants stated that they were elsewhere when the shooting occurred, and their statement in this regard was substantiated by another witness. Both defendants denied knowing anything about the shooting, and Oxford stated that, in so far as he was concerned, it was a spite prosecution.

The evidence certainly warranted the conviction of Marvin Merritt. A careful analysis of the evidence, direct and circumstantial, leads us to the conclusion that no conspiracy was established between the defendants, and, without proof to that effect, there is nothing to connect Oxford with the shooting. We hold that the evidence was insufficient to convict Oxford, and the judgment is reversed in so far as he is concerned.

In special ground 1 it is averred that the court erred in refusing to grant a continuance of the case because counsel for the defendants "had not had a fair opportunity to prepare for trial." In support of this motion counsel stated in his place that he "had just been employed and was utterly unprepared for trial;" that he had not had time to converse with the defendants "satisfactorily," and had not "conferred at all with any of the witnesses;" that "all continuances since the return of the indictment had been by consent;" that the defendant "had been advised by the solicitor-general that the case would not be tried at the September, 1931, term," and that "they would be continued by the State for the term;" that the defendants "acted on this statement . . and returned to their

homes, and were only notified that the case would be called for trial at said term Saturday before the reconvening of court on the Monday following, at which time the case was called for trial."

We quote from *Hall* v. *State, 22 Ga. App.* 112 (95 S. E. 936), as follows: "(*a*) 'All applications for continuances are addressed to the sound legal discretion of the court.' Penal Code (1910), § 992. (*b*) 'While ample time to prepare for trial should be allowed to one accused of crime, it is the duty of a defendant, who has given bond for his appearance at a specified term of the . . court, to employ counsel and take any other steps essential to his defense, in advance of the term of court at which he is bound to appear.' *Walker* v. *State,* 11 *Ga. App.* 251 (74 S. E. 1100). (*c*) 'In order for this court to control the discretion of the trial judge in refusing to grant a motion for the postponement of a criminal case to allow counsel to prepare for trial, it is necessary that it should appear that a gross mistake has been made by the trial judge, or that he has displayed a want of consideration for the rights of the accused.' *Harris* v. *State,* 119 *Ga.* 114 (45 S. E. 973)."

The special presentment in this case was returned at the September term, 1930. There had been several continuances of the case. In his statement to the court, counsel did not say in so many words whether or not the defendants were out on bond; but evidently they were at liberty, or they could not have returned to their homes, as averred by counsel. We therefore consider the case as though both defendants were out on bond. Why the defendants waited so long to employ counsel does not appear. Indeed, there appears no reason why, even though they had neglected to do so earlier, they could not have employed counsel on the Saturday on which they were notified that their case would be called. There is no complaint that the defendants were deprived of the benefit of having any of their witnesses at the trial. The case is not particularly intricate, and the defendants were represented by able counsel. We can not say that the trial judge abused his discretion in refusing the continuance.

Coming to the only other special ground, numbered 2, we quote from *Clare* v. *Drexler,* 152 *Ga.* 419 (5) (110 S. E. 176), as follows: "An assignment of error on the ground that the court erred in admitting certain evidence, without showing that it was objected

to at the time it was offered, and upon what ground the objection was based, raises no question for decision." It is also true that the overruling of an objection to testimony in bulk, where some of such testimony is not subject to objection, is not ground for a new trial. *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 716 (145 S. E. 486), and cit. The objection to the testimony set out in this ground violates the rule stated in the *Drexler* case, supra; and, even if there had been an objection, a portion of the testimony was certainly not subject to any objection. For instance, the witness Jackson swore: "I did not know Mr. Oxford. . . They were about seventy-five or eighty yards at the time, or might have been a little further than that."

The conviction of the defendant Marvin Merritt is affirmed, and the conviction of John Oxford is reversed solely upon the general grounds.

*Judgment reversed in part and affirmed in part. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*